UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| D.R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No. 21-cv-05196-VKD <br><br> **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 19, 21 |

Plaintiff D.R.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner")[2] denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381, *et seq*. D.R. contends that the ALJ erroneously concluded that her mental impairments are not severe, did not properly evaluate certain medical opinions, and did not properly assess her residual functional capacity ("RFC") in concluding that she can perform other jobs in the national economy and therefore is not disabled.

The parties have filed cross-motions for summary judgment. Dkt. Nos. 19, 21. D.R. did not file a reply brief. The matter was submitted without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below,

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as defendant in place of Andrew Saul.

the Court denies D.R.'s motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.[3]

## I.  BACKGROUND

D.R. was born in 1977 and currently is 45 years old. She completed high school and three years of college, and has certifications in business communications, business management, office policies and procedures, and branding and marketing strategies. She has worked as a storage facility clerk, storage facility manager, telephone operator, cashier, and administrative assistant. *See* AR[4] 44, 59, 141, 235, 263, 270.

D.R. filed an application for disability insurance benefits on May 20, 2019 and an application for supplemental security income on September 19, 2019. AR 141-150, 234-236. She alleged that she has been disabled since July 26, 2018 due to bilateral carpal tunnel syndrome, neuropathy, hypertension, pseudotumor cerebri, and mental stress. AR 262-263. Her applications were denied initially and on reconsideration. AR 68-133. An ALJ held a hearing on December 17, 2020, at which a vocational expert ("VE") testified. AR 38-67.

On March 30, 2021, the ALJ issued an unfavorable decision. AR 12-34. He found that D.R. meets the insured status requirements of the Act through December 31, 2024, D.R.'s last date insured. AR 18. D.R. worked after the alleged disability onset date of July 26, 2018, and the ALJ found that she engaged in substantial gainful activity from January 2020 to February 2021. *Id*. However, noting that there were continuous 12-month period(s) during which D.R. did not engage in substantial gainful activity, the ALJ stated that his remaining findings addressed those periods in which there was no substantial gainful activity. *Id*.

The ALJ found that D.R. has the following severe impairments: carpal tunnel syndrome; obesity; disorder of the muscle, ligament, and fascia; and neuropathy due to chemotherapy. AR 18. While the ALJ also found that D.R. has medically determinable impairments of anxiety

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 9.

[4] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 16.

disorder and depressive disorder, he concluded that these impairments do not cause more than mild limitation in her ability to perform basic mental work activities, and are not severe. AR 19.[5] The ALJ further found that D.R. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations. AR 21. The ALJ determined that D.R. has the RFC to perform less than the full range of light work. Specifically, he found that D.R.:

> can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can push and/or pull as much as she can lift and/or carry; can occasionally climb ramps and stairs; should never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to cold, heat, fumes, odors, dusts, gases, pulmonary irritants, unprotected heights, and dangerous moving mechanical parts; can frequently reach in all directions with the right upper extremity except only occasional overhead reaching with the right upper extremity; and can occasionally handle, finger, and feel with the bilateral upper extremities.

AR 21. The ALJ found that D.R. is unable to perform any past relevant work and that transferability of job skills is not material to the determination of disability. AR 27. Based on D.R.'s age, education, work experience and RFC, the ALJ determined that she can perform other jobs that exist in significant numbers in the national economy, namely furniture rental clerk, dealer accounts investigator, and shipping and receiving weigher. AR 27-28. Accordingly, the ALJ concluded that D.R. is not disabled. AR 28-29.

The Appeals Council denied D.R.'s request for review of the ALJ's decision. AR 1-6. D.R. then filed the present action seeking judicial review of the decision denying her applications for benefits.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not

---

[5] The ALJ found that D.R.'s leukemia (in remission) and other reported impairments of history of pseudotumor cerebri, hypertension, asthma, and diabetes are non-severe conditions. AR 19. D.R. does not challenge those findings.

supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III. DISCUSSION

As noted above, D.R. contends that the ALJ erroneously concluded that her mental impairments are not severe, did not properly evaluate certain medical opinions, and did not properly assess her RFC in concluding that she can perform other jobs and therefore is not disabled. Because all of D.R.'s arguments are at least partly informed by her arguments concerning the alleged errors in the ALJ's evaluation of certain medical opinions, the Court addresses those arguments first.

### A. Medical Opinions

D.R. contends that the ALJ did not properly evaluate the opinions of two examining consultants: licensed psychologist Jeremy Blank and internist Robert Tang, M.D. Specifically, D.R. argues that the ALJ did not give sufficient reasons for rejecting Dr. Blank's opinion as "unpersuasive" and erred in finding that Dr. Tang's opinion is "persuasive overall."

4

Under the regulations that apply to D.R.'s applications,[6] the Commissioner no longer gives specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians. Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c[7]; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. 20 C.F.R. § 404.1520c(b)(2).

---

[6] The Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in March 2017 and apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because D.R.'s applications were filed after March 27, 2017, these revised regulations apply to her case.

[7] Because the regulations regarding disability insurance benefits applications and supplemental security income applications are nearly identical, for simplicity the remainder of this order cites only to the regulations pertaining to disability insurance benefits applications.

### 1.     Dr. Tang

Consulting examiner Robert Tang, M.D. is an internist who conducted an internal medicine evaluation of D.R. on September 23, 2019.  AR 616-622.  His diagnoses included acute promyelocytic leukemia (five years in remission); marked right arm pain from extensive past intravenous access; bilateral carpal tunnel syndrome (more pronounced on the right than the left),[8] treated with braces and physical therapy; hypertension; and diet-treated diabetes melllitus type 2, with an A1C of 6.4 and no gross signs of end organ disease.  AR 620.  Dr. Tang concluded that D.R. can perform light work, with certain postural and manipulative limitations.  He found that D.R. has no limitations in her ability to stand and walk or sit; that she can lift and carry twenty pounds occasionally and ten pounds frequently; is limited to occasionally climbing ladders and crawling; is limited to occasionally handling and fingering and frequently feeling on the left; and is limited to frequently reaching forward and overhead, frequently feeling, and occasionally handling and fingering on the right.  AR 620-621.

The ALJ found Dr. Tang's opinion "to be persuasive overall," explaining that his "opinion has support from the examination findings."  AR 24-25.  Here, the ALJ noted that D.R. had normal tandem walk and normal toe-heel stand; she reported that her right shoulder/arm felt heavy due to chronic pain; her bilateral wrist range of motion was extension 0-60 degrees, flexion 0-60 degrees, radial deviation 0-20 degrees, and ulnar deviation 0-30 degrees.  The ALJ also noted Dr. Tang's findings that D.R.'s slow hand dexterity was intact to alternating finger touch and handling small objects; D.R. had good handwriting; D.R.'s strength was 5/5 in the bilateral upper and lower extremities, including grip; and D.R.'s sensory exam was grossly intact to light touch and pinprick throughout the bilateral upper and lower extremities.  AR 25 (citing AR 619-620).  The ALJ nonetheless assessed greater restrictions for only occasional overhead reaching and occasional feeling with the right upper extremity.  AR 25.

D.R. does not take issue with the ALJ's explanation that Dr. Tang's opinion is consistent with his examination findings.  Instead, she contends that the ALJ erred in finding Dr. Tang's

---

[8] D.R. is left-handed.  *See* AR 50.

6

opinion "persuasive overall," when Dr. Tang reviewed only physical therapy notes and did not review certain other evidence that was submitted to the agency after he conducted his evaluation. *See* AR 617. Specifically, D.R. points out that Dr. Tang did not review electromyography ("EMG") tests conducted in 2014, 2017, and 2019 and an October 15, 2019 evaluation conducted by Jennifer Schofield, PA-C and Andrew Stein, M.D. documenting moderate and severe bilateral CTS, milder bilateral cubital tunnel syndrome, and a left middle trigger finger. *See* AR 511, 628-634, 680.

While the catch-all provision of "other factors" that the Commissioner considers when evaluating medical opinions includes "evidence showing a medical source has familiarity with the other evidence in the claim," 20 C.F.R. § 404.1520c(c)(5), D.R. fails to persuade to the extent she suggests that Dr. Tang's opinion is not persuasive because he did not review anything other than physical therapy records. Although Dr. Tang himself may not have had access to all of the medical evidence, the ALJ reviewed the record evidence, and specifically considered the 2014, 2017, and 2019 EMG tests and the evaluation by Dr. Stein and Ms. Schofield. AR 23-25. In reviewing the assessments of two state agency medical consultants, the ALJ stated that he found Dr. Tang's opinion to be "generally more consistent with the record, including the imaging studies and the EMG studies discussed above." AR 25. And as noted above, the ALJ also found that Dr. Tang's opinion was supported by his own examination of D.R.—a finding that D.R. does not challenge.

Accordingly, in considering the opinion of Dr. Tang, the ALJ applied the proper legal standards and found it persuasive because it was supported by Dr. Tang's exam findings and generally consistent with the record as a whole. 20 C.F.R. §§ 404.1520c(b)(2). The Court finds no error here.

### 2. Dr. Blank

Consulting examiner Dr. Blank is a licensed psychologist who evaluated D.R. on October 2, 2019. AR 623-627. In his mental status exam, he noted D.R.'s "cooperative manner," "good eye contact," intact gross motor function, normal grooming, and good hygiene, and stated that D.R. "interacted appropriately with the examiner and office staff throughout the evaluation."

AR 623, 624. Testing demonstrated that D.R.'s concentration and calculation were unimpaired and that her memory was intact. Additionally, Dr. Blank assessed that D.R. had coherent speech; an adequate fund of knowledge for current events; intact, linear, and logical thought process; unremarkable thought content; and good insight and judgment. AR 624, 625. Results of a mini-mental state examination, in which D.R. scored 29 out of 30 possible points, conclusively demonstrated that her cognitive functioning was normal. AR 625.

Dr. Blank also observed D.R.'s "anxious, sad" mood and "tearful" affect and documented her history and complaints of depression and anxiety, noting that she is a cancer survivor and had experienced personal losses, including her parents, her grandmother, and an aunt who raised her. AR 623, 625. Dr. Blank stated his diagnostic impressions of unspecified depressive disorder and unspecified anxiety disorder. AR 626. He found that D.R. can manage funds, is functionally unimpaired in her ability to follow simple, as well as complex or detailed, instructions and maintain pace/persistence, and is only mildly impaired in her ability to maintain adequate attention/concentration and to interact appropriately with co-workers, supervisors and the public on a regular basis. However, he assessed mild to moderate impairments in her ability to adapt to changes in job routine; withstand the stress of a routine workday; and adapt to changes, hazards, or stressors in a workplace setting. *Id*. Dr. Blank's report states that his assessment of "moderate" and "severe" impairment is "considered functionally debilitating." *Id*.

To the extent Dr. Blank assessed D.R. with moderate functional limitations, the ALJ found his opinion to be "unpersuasive" for two reasons. AR 26. The ALJ explained that Dr. Blank's moderate limitations are not supported by his "mild mental status examination findings" and are "inconsistent with the claimant's ability to work full-time from 2020 to 2021." AR 26. The ALJ further noted that D.R.'s "ability to work full-time indicates that she has a much greater capacity to work than Dr. Blank's opinion suggests, including the ability to take on the addition of new job tasks, such as cleaning."[9] AR 26.

---

[9] At the time of the administrative hearing, D.R. was working as a manager for a self-storage facility. AR 45. In describing her job duties, D.R. testified that due to the COVID-19 pandemic, maintenance duties (such as interior and exterior cleaning tasks) had become part of management's regular responsibilities. AR 45-46.

D.R. argues that the ALJ erred in rejecting Dr. Blank's opinion based on the fact that she worked after the July 26, 2018 alleged onset date. Noting that the ALJ directed his findings to the period(s) of time when she was not engaged in substantial gainful activity (AR 18), D.R. contends that her employment from January 2020 to February 2021 is irrelevant to assessing the severity of her impairments in 2018 and 2019. Dkt. No. 19-1 at 11. There is no apparent dispute, however, that the relevant period under consideration is from the alleged onset date of July 26, 2018 through the March 31, 2021 date of the ALJ's decision.[10] *See* 20 C.F.R. §§ 416.202, 416.305, 416.330, 416.501 (relevant period to establish disability for supplemental security claims begins with the date of the claimant's application); *see generally Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (claimant must establish disability on or before the date last insured to be entitled to a period of disability and disability insurance benefits). While D.R. suggests that her work activity from January 2020 to February 2021 was an intermittent period of improvement due to the waxing and waning of her symptoms, the ALJ validly considered that Dr. Blank's opinion was inconsistent with D.R.'s employment for a continuous period of over one year after her alleged onset of disability.

D.R. argues that Dr. Blank's opinion concerning her mental functioning is both supported by and consistent with Dr. Blank's review of other evidence showing persistent depressive disorder; major depressive disorder, single episode; and chronic pain, as well as his observations of her anxious, sad mood and tearful affect. *See* Dkt. No. 19-1 at 12 (citing AR 623). While there may be evidence in the record to support Dr. Blank's opinion, the ALJ found that other evidence in the record conflicted with or undermined that opinion, including that D.R. worked for over a year even after Dr. Blank assessed moderate limitations in her mental functioning. Elsewhere in his decision, the ALJ also correctly observed that Dr. Blank's October 2, 2019 evaluation noted that D.R. was "well groomed with good hygiene" and that she "reported being independent for her [activities of daily living] and [instrumental activities of daily living], except where limited by her physical pain (eg, she cannot button her shirt so has her daughter help her)." AR 20, 624.

---

[10] The record indicates that D.R. contemplated requesting a closed period of disability (*see* AR 57), but there is no indication that she made such a request.

D.R. nonetheless maintains that the ALJ erred by failing to explain why he rejected Dr. Blank's opinion in favor of the opinions of the nonexamining state agency consultants, Paula Kresser, Ph.D. and Michael D'Adamo, Ph.D., who concluded that D.R.'s anxiety and depressive mental impairments were not severe and that she had no more than mild limitations in her mental functioning. *See* AR 75-76, 90-91, 108-109, 124-125. Under the Commissioner's revised regulations, a medical source's relationship with the claimant remains relevant when evaluating the persuasiveness of the source's opinion. *Woods*, 32 F.4th at 792. D.R., however, points to no requirement under the applicable regulations that an ALJ provide an explanation based on a comparative weighing of the medical opinions. The ALJ simply must explain, based on substantial supporting evidence, the extent to which he finds an opinion persuasive. The ALJ explained his findings regarding the four broad areas of mental functioning, with reference to the opinions of Drs. Kresser, D'Adamo and Blank, as well as other record evidence, including D.R.'s own statements and that of her son. *See* AR 20-21. Although discussion of relationship factors may be appropriate in cases where two or more opinions are equally well-supported and consistent with the record, 20 C.F.R. § 404.1520c(b)(3), D.R. has not shown that such a discussion regarding the opinions of Drs. Kresser and D'Adamo is required in this case. The ALJ's assessment of Dr. Blank's opinion as "unpersuasive" is supported by substantial evidence, and the Court finds no error here.

### B.     Mental Impairments

At step two of the sequential analysis, the ALJ found that D.R. has non-severe medically determinable impairments of anxiety disorder and depressive disorder, with no more than mild limitations in the four broad areas of mental functioning described in regulations for evaluating mental impairments, known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See* AR 19-21; *see also* 20 C.F.R. § 404.1520a (describing process for evaluating mental impairments). D.R. does not challenge the ALJ's finding that she has no limitations in her ability to understand, remember, or apply information or in her ability to concentrate, persist, or maintain pace. However, she disagrees with the ALJ's conclusion that she

has only mild limitations in her ability to interact with others and to adapt.  *See* AR 20; Dkt. No. 19-1 at 9.

At step two of the five-step sequential analysis, the ALJ must assess the medical severity of a claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  A severe impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  The claimant bears the burden of showing that he has a medically severe impairment or combination of impairments.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (stating that "[t]he burden of proof is on the claimant as to steps one to four" of the sequential analysis).

An impairment or combination of impairments is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "Basic work activities are abilities and aptitudes necessary to do most jobs," *Smolen*, 80 F.3d at 1290, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting," SSR 85-28, 1985 WL 56856 at *3.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen*, 80 F.3d at 1290 (citing SSR 85-28); *see also Webb*, 433 F.3d at 686 (same).  If the claimant has a severe medically determinable physical or mental impairment, or a combination of impairments, that is expected to last at least 12 continuous months, she is disabled.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

D.R. contends that the ALJ did not discuss evidence she says demonstrates more than mild limitations in her ability to get along with others.  Specifically, she notes a few instances in which she did not cooperate with medical personnel and with a Social Security claims representative, and one incident in which she was involved in a physical altercation with her niece, requiring treatment at a hospital.  *See* AR 73, 420-422, 468, 610, 612.  D.R. also argues that the ALJ did not

11

mention her statement that she "need[s] help getting mentally [and] physically prepared to go out with family/friends on family outings," or evidence showing that D.R. sought therapy for depression and stress and reported that she was isolating from others. *See* AR 53, 289, 465, 704, 706.

The ALJ was not required to address every piece of evidence, *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), and in any event the ALJ's determination that D.R. has no more than mild limitations in her ability to interact with others is supported by substantial evidence. Although the ALJ did not refer to the specific evidence cited by D.R., he did consider evidence of and accounted for D.R.'s social difficulties. He correctly noted that in D.R.'s function report she stated that she does not go out or socialize as much as she used to and prefers to stay in, but nonetheless also reported that she does not have problems getting along with others, and that she spends time walking, talking, and sharing quality time with her children and close family. AR 20, 291, 292. The ALJ also acknowledged that D.R.'s son reported that D.R.'s "interactions w[ith] others is challenging" due to anxiety and depression, but correctly pointed out that Dr. Blank observed D.R.'s cooperative manner, good eye contact, and appropriate interaction with Dr. Blank and office staff. AR 20, 284, 623, 624.[11] Additionally, the ALJ stated that "at the time of the hearing, the claimant was working full-time in a public facing position." AR 20. D.R. contends that there is no evidence that her job as a manager at a public storage facility was a "public facing position." Dkt. No. 19-1 at 10. But the Court agrees with the Commissioner that the ALJ's inference that the job was a "public facing" one is a rational interpretation of the evidence. While D.R. argues that the ALJ also ignored her testimony "that she has difficulty getting along with other people," (Dkt. No. 19-1 at 10), in her actual cited testimony, D.R. simply noted that "if [she] [has] to interact with someone that's not so pleasant, it becomes a bit of a challenge." AR 53.

With respect to D.R.'s ability to adapt, D.R.'s arguments turn largely on her contention

---

[11] As discussed above, elsewhere in his decision, the ALJ noted that Dr. Blank assessed D.R. with only mild limitations in her ability to interact appropriately with coworkers, supervisors, and the public on a regular basis. *See* AR 26, 626.

that the ALJ did not properly assess Dr. Blank's opinion as "not persuasive" and did not appropriately consider that D.R. was working at the time of the hearing. For the reasons discussed above, the ALJ properly evaluated Dr. Blank's opinion and D.R.'s arguments to the contrary are unpersuasive. The ALJ otherwise acknowledged D.R.'s statements that she does not handle stress or changes in routine well, and that progress notes from therapist Addie Brown reveal depressed mood. AR 20. D.R. contends that the ALJ overlooked or minimized Ms. Brown's October 24, 2019 report documenting D.R.'s reported decreased appetite, trouble concentrating, difficulty sleeping, low motivation, isolation from others, depressed mood, tearful or crying spells, anxiety, panic, and increased appetite. *See* AR 706. However, the ALJ correctly observed that in the same report Ms. Brown noted D.R.'s functional status as "intact." *See* AR 20, 293, 705, 706. While D.R. disputes that "intact" means that she is able to manage herself or adapt, the ALJ also correctly observed that Dr. Blank's October 2, 2019 evaluation noted that D.R. was "well groomed with good hygiene" and that she "reported being independent for her [activities of daily living] and [instrumental activities of daily living], except where limited by her physical pain (eg, she cannot button her shirt so has her daughter help her)," and that at the time of the hearing, D.R. was working full-time. AR 20, 624. The ALJ's findings of mild impairment in D.R.'s ability to adapt and manage herself are supported by substantial evidence. The Court finds no error here.

### C. RFC

D.R. nonetheless maintains that in assessing her RFC, the ALJ erred by failing to consider her mental impairments of depression and anxiety. D.R. says that the alleged error in evaluating her RFC means that the Commissioner has not satisfied her burden at step five of the sequential analysis to establish that D.R. can perform other jobs. Specifically, D.R. contends that the ALJ erred by failing to give the VE hypotheticals that included limitations regarding (1) contact with the public, co-workers, and supervisors due to her mental impairments and (2) limited neck motion in view of medical records showing reduced range of motion. The Commissioner maintains that the ALJ's RFC determination is supported by substantial evidence.

In assessing a claimant's RFC, an ALJ must consider all of the claimant's impairments, including those that are not severe. *See* 20 C.F.R. § 404.1523(c) ("In determining whether your

13

physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); *id*. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); *id*. § 404.1545(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of subpart P of part 404 of this chapter, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."); *see also* SSR 96-8p, 1996 WL 374184 at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). "While these regulations require the ALJ to *consider* the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC." *Rania v. Kijakazi*, No. 2:20-cv-01541 MCE CKD (SS), 2021 WL 5771663, at *3 (N.D. Cal. Dec. 6, 2021), *report and recommendation adopted*, 2022 WL 95228 (E.D. Cal. Jan. 7, 2022). *Cf. Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012) (finding ALJ erred in explicitly refusing to consider claimant's mild mental impairments).

With respect to her mental impairments, D.R. argues that in his hypothetical questions to the VE, the ALJ should have included a limitation in working with supervisors, co-workers, and the public. Here, she again notes the same evidence cited in her challenge to the ALJ's determination that she has only mild limitations in her ability to interact with others, namely the four instances where she did not cooperate with medical personnel and with a Social Security claims representative, and had an altercation with her niece, as well as statements by D.R. and her son that she has difficulty getting along with others. *See* Dkt. No. 19-1 at 14; AR 53, 73, 285, 420-422, 468, 610.

Although the ALJ did not include a social interaction limitation in a VE hypothetical or in his ultimate RFC finding, the record reflects that he gave reasoned consideration to evidence

14

regarding D.R.'s social function limitations before concluding that they did not cause meaningful limitations in D.R.'s ability to perform basic work activities. As discussed above, the ALJ acknowledged D.R.'s reported social difficulties, and similar statements by her son. AR 20, 285, 291, 292. However, he correctly noted other evidence demonstrating D.R.'s ability to interact appropriately with others, including D.R.'s own statements in her function report that she has no problems getting along with family, friends, neighbors, and others and that her social activities include walking, talking, and sharing quality time with her children and close family, and Dr. Blank's observations of D.R.'s cooperative behavior, good eye contact, and appropriate interaction with Dr. Blank and office staff. AR 20, 291, 292, 623. The ALJ also considered the opinions of the state agency psychological consultants, who found only mild limitations in D.R.'s ability to interact with others. AR 20, 90, 91, 108. The ALJ included this discussion and analysis at step two of the sequential analysis and incorporated it into his RFC assessment. AR 21. However, an ALJ is not required to discuss and evaluate evidence under any particular heading, and this was not a boilerplate incorporation of the paragraph B criteria into the RFC. Indeed, in his RFC assessment, the ALJ gave further consideration to evidence, namely Dr. Blank's opinion, concerning D.R.'s ability to interact appropriately with others. As discussed above, the ALJ properly evaluated Dr. Blank's opinion, correctly noting that Dr. Blank assessed D.R. with only mild impairment in her ability to interact appropriately with co-workers, supervisors, and the public on a regular basis—a point on which the state agency psychological consultants all agreed. AR 26, 91, 108, 626. Additionally, the ALJ appropriately found that D.R.'s ability to work full-time for over one year indicated that she has a greater capacity to work than Dr. Blank's opinion otherwise suggests. AR 26. Substantial evidence supports the ALJ's determination to omit a functional limitation in interacting with co-workers, supervisors, and the public in a VE hypothetical and in his RFC determination. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (concluding that ALJ did not err by omitting any limitations for depression from a hypothetical question, where the record demonstrated that claimant's mild depression "presented no significant interference with the ability to perform basic work-related activities."); *Frary v. Comm'r of Soc. Sec.*, No. 1:20-cv-00260-SAB, 2021 WL 5401495, at *17-19 (E.D. Cal. Nov. 18,

2021) (concluding that ALJ did not err where it was clear from the record that he considered and discussed limitations associated with claimant's non-severe impairments in assessing RFC).

With respect to her neck, D.R. points to examination records indicating a reduced range of motion. *See* AR 473 (July 26, 2018 examination noting "range of neck extension 50 degrees, rotation (90 degrees bilaterally)"), 619 (Dr. Tang's September 23, 2019 examination noting flexion 0-50 degrees and extension 0-60 degrees), 629 (Dr. Stein and Ms. Schofield's new patient evaluation noting "[n]eck motion is reduced 30-40% in all p[l]ains."). She also points out that a December 28, 2020 MRI of the cervical spine shows "[s]evere asymmetric right C5-6 uncinate hypertrophy causing severe right foraminal stenosis crowding the exiting root." AR 733. Noting that the ALJ determined that D.R. had a severe impairment of "disorder of muscle, ligament, and fasica" (AR 18), D.R. argues that the ALJ should have posed a hypothetical to the VE that inquired about any work restrictions due to limited neck motion. However, "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see also Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly [has] diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982) ("The existence of emotional disorder, however, is not per se disabling. In addition, there must be proof of the impairment's disabling severity.") (internal quotations and citations omitted). D.R. points to no opinions, administrative findings, or other evidence about what she can do or what limitations she may have due to the range of motion in her neck. Dr. Tang and state agency consultants Dr. D. Lee and Dr. G. Lee evaluated D.R.'s physical limitations, and did not assess limitations based on D.R.'s neck. *See* AR 78-80, 126-129, 620-21. The ALJ also expressly considered the new patient evaluation by Ms. Schofield and Dr. Stein, and specifically noted findings that D.R.'s "neck motion was reduced 30-40%, but Spurling's was negative for radiculopathy." AR 23, 629. The Court finds no error here.

## IV. CONCLUSION

Based on the foregoing, D.R.'s motion for summary judgment is denied, the Commissioner's cross-motion for summary judgment is granted. The Clerk shall enter judgment

16

accordingly and close this file.

**IT IS SO ORDERED.**

Dated: January 6, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge